271 So.2d 409 (1973)
Ruby Lee SMITH
v.
Jerry WALTON.
No. 46829.
Supreme Court of Mississippi.
January 2, 1973.
*411 Brunini, Everett, Grantham & Quin, Robert A. Weems, Vicksburg, for appellants.
Ramsey, Bodron & Thames, P. Kelly Loyacono, Vicksburg, for appellee.
*410 ROBERTSON, Justice:
Ruby Lee Smith and her children brought suit against Jerry Walton in the Circuit Court of Warren County, Mississippi, for the wrongful death of George Smith, her husband and the father of her children. The jury returned a verdict for the defendant, Jerry Walton. Hence this appeal.
About 7:00 P.M. on the night of February 2, 1970, after it had been raining and snowing during the day, George Smith was walking north on the right shoulder of U.S. Highway 61 about 2 1/2 miles north of Vicksburg, Mississippi. Jerry Walton, after noting Smith walking rather close to the pavement with his back to him, continued to drive north on U.S. Highway 61 at about 30 to 35 miles per hour. Walton testified that there was no other traffic on the highway and he continued to drive close to the east edge of the pavement. Walton also testified that he first saw Smith when he was about a block and a half away but did not sound his horn and really didn't pay too much attention to him. When Walton was about half a carlength back of him, Smith suddenly stepped or jumped over on the highway. Walton tried to swerve to the left but the right corner of his car hit Smith. Smith was thrown up on the hood of the car; his head and arm hit the windshield and broke it, and his body fell off of the right side of the car. Walton estimated that Smith was about a foot or a foot and a half on the highway when his car struck Smith.
Appellants assign as error:
1. The trial court erred in refusing to direct a verdict in favor of the Plaintiffs and in refusing to grant Plaintiffs' motion for a judgment notwithstanding the verdict because the actions and conduct of the Defendant as shown by the Defendant's own testimony constitutes negligence as a matter of law.
2. The trial court erred in giving the following instructions for the Defendant, to-wit:
(A) The Court instructs the jury for the Defendant, Jerry Walton, that the laws of the State of Mississippi require the Plaintiff, when walking along a public highway, at a place such as where the accident occurred, to walk on his left-hand side thereof, or in such a way as to face the direction from which an automobile using that side of the road would approach him. The Court further instructs the jury that the laws of the State of Mississippi require that the Plaintiff should keep a reasonable and proper lookout for traffic using the highways of the State of Mississippi and that at the point on U.S. Highway 61 North, where the collision occurred, the Plaintiff was required by statute to yield the right-of-way to oncoming traffic and if you believe from the evidence in this case that the failure of Mr. George Smith, deceased, to walk on the correct side of the highway, and his failure to keep a proper lookout, if any, and his stepping into the highway, if such were the case, were the sole proximate causes *412 of this accident, then you must find for the Defendant, Jerry Walton.
(B) The Court instructs the jury for the Defendant that where the driver of an automobile is driving his automobile at a reasonable speed and has the automobile under reasonable control and is keeping a reasonable lookout, then no liability for negligence attaches for injury to a pedestrian who unexpectedly walks, steps or hurries either in front of or into the front of Defendant's automobile, when so close thereto that the driver of the automobile, by the exercise of reasonable care, is unable to avoid a collision, and in this case, if you believe from the evidence, that Mr. George Smith was walking along the shoulder of the East side of Highway 61 North and that Jerry Walton was driving his automobile at a reasonable rate of speed and had his automobile under reasonable control, and that when he was at a position near Mr. Smith, that Mr. Smith walked, stepped or hurried into the path of his automobile or into some portion thereof, and that the Defendant, Jerry Walton, then acted as a reasonably prudent person would have acted in trying to avoid the accident, but, despite his efforts there was a collision between his car and Mr. Smith, then it will be your duty to return a verdict for the Defendant, even though Mr. Smith died of the injuries received as a result of the collision with the Walton automobile.
(C) The Court instructs the jury for the Defendant, that the driver of an automobile is not required by law to anticipate that a pedestrian, that is one walking on or near a street or highway, and in a place of safety, will leave that place of safety and get into a place of danger, until the pedestrian makes some demonstration or movement reasonably indicating that he will leave his place of safety and proceed into a place of danger, and if you believe from the evidence that Mr. Smith was walking on the East side of Highway 61 North and that said place was a place of safety, and that the Defendant, Jerry Walton, was keeping a reasonable and alert lookout as he drove along said highway, then there was no duty placed on the Defendant, Jerry Walton, to anticipate that Mr. George Smith, deceased, would leave his place of safety and move out into the path of Defendant's automobile, and if you so believe that Mr. George Smith did walk or hurry unexpectedly and suddenly into the path of said automobile, then the Defendant, Jerry Walton, was not guilty of any negligence in not anticipating that the deceased would leave his position and move into the path of Defendant's automobile.
(D) The Court instructs the jury for the Defendant that a pedestrian is prohibited from suddenly leaving a curb, shoulder or other place of safety and walking or running into the path of a vehicle which is so close that it is impossible for the driver to yield, and if you find from the evidence in this case that the Plaintiff did so suddenly leave the curb, shoulder or other place of safety and walk or run into the path of the Defendant's vehicle at a time when it was impossible for the Defendant to yield; and if you further find that such action was the direct and proximate cause of the Plaintiff's injuries, then you shall find for the Defendant, Jerry Walton.
(E) The Court instructs the jury for the Defendant that where the driver of an automobile is driving at a reasonable speed and has the automobile under reasonable control and is keeping a reasonable lookout, then no liability for negligence attaches for an injury to a pedestrian who unexpectedly darts, dashes, hurries, or walks either in front of or into the front of the automobile when the pedestrian is so close to the automobile, that the driver who exercises reasonable care, is unable to avoid a collision.
*413 The trial court was correct in refusing to direct a verdict for the appellants because "All questions of negligence and contributory negligence" are for the jury to decide under proper instructions of the court as to the applicable principles of law involved. Section 1455, Mississippi Code 1942 Annotated (1956).
Instruction (A) is clearly erroneous and the granting of this instruction constituted fatal error. It was formerly the law of Mississippi that a pedestrian walk on the lefthand side of a highway facing oncoming traffic, Section 5574, Mississippi Code of 1930 Annotated, but that section was repealed in 1938, Section 159, Chapter 200, General Laws of Mississippi of 1938.
In Layton v. Cook, 248 Miss. 690, 160 So.2d 685 (1964) this Court said:
"In the absence of a statute to the contrary, a pedestrian has the right to use and travel upon any portion of a public highway at any time of the day or night, `and his rights and the rights of one operating a vehicle thereupon are mutual, reciprocal, and equal.' The operator of a motor vehicle owes to pedestrians walking along the highway the duty to exercise reasonable or ordinary care to avoid injuring them." 248 Miss. at 696, 160 So.2d at 687.
It is true that Section 8202(a), Mississippi Code 1942 Annotated (1956), provides:
"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."
but Section 8202(d) also states the law to be:
"Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway." (Emphasis added.)
Section 8250, Mississippi Code 1942 Annotated (1956), also provides:
"The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway." (Emphasis added.)
Instruction (B) does not embody either the "when necessary" or "when reasonably necessary" test to whether the horn should have been sounded and Smith warned of the approach of Walton's car. In this respect this instruction was in conflict with Instruction No. 1 for plaintiffs which correctly stated this test. Instruction (B) was faulty and should not have been approved.
It was a question for the jury to decide upon proper instructions whether or not it was reasonably necessary for Walton, acting as a reasonable and prudent man, to sound his horn when it was raining and snowing and Smith was walking along the shoulder of the road with his back to approaching traffic and apparently unaware of the approach of Walton's automobile.
Instruction (C) is subject to the same criticism as Instruction (B). It does not submit for the jury's consideration whether it was necessary for Walton to sound his horn under the peculiar circumstances of this case. This incomplete instruction should not have been given.
Instruction (D) uses the terms "curb, shoulder or other place of safety" when no "curb" or "other place of safety" was involved in this case. It also does not mention that the action of the deceased must have been the "sole" proximate cause *414 of his injuries. It doesn't mention the other tests that apply in this case: that the defendant must have been traveling at a reasonable and proper rate of speed under the weather conditions then prevailing, must have been keeping a reasonable lookout, and must have given warning of his approach if found to be reasonably necessary. This instruction is rather confusing because it uses the term "Plaintiff" rather than "Smith" or "the deceased".
Instruction (E) is an abstract instruction, is not made applicable to the peculiar facts of this case, does not submit the test of warning where reasonably necessary and is otherwise incomplete. It is also subject to the criticism of being repetitious and thereby overemphasizing only one of the many tests to be applied.
For the reasons herein stated, the judgment is reversed and the cause remanded for a new trial.
Reversed and remanded.
GILLESPIE, C.J., and PATTERSON, INZER, SMITH, SUGG and BROOM, JJ., concur.
RODGERS, P.J., and JONES, J., dissent in part and concur in part.
RODGERS, Presiding Justice (dissenting in part).
I agree with the opinion of Judge Jones. The appellant was entitled to a directed verdict of liability, because the testimony of the defendant shows that he was negligent, and that his negligence contributed to the injury of the decedent, George Earl Smith. Section 1455, Mississippi Code 1942 Annotated (1956) does not apply as to the negligence of appellee, because his testimony admits his negligence. He was "paying no attention." He drove his automobile as close to the decedent as possible on a cold, rainy, snowy night and made no effort to slow the speed of his car or to warn him.
I agree with the majority opinion that the instructions granted the appellee were erroneous. They failed to take into consideration our Mississippi Comparative Negligence Statute: Section 1454, Mississippi Code 1942 Annotated (1956). Moreover, they are based upon the assumption of risk doctrine. This rule does not apply to the facts in this case. The decedent was not warned and obviously did not know that the automobile was about to run over him. The rule of assumption of risk requires knowledge coupled with deliberate exposure. One text writer describes the doctrine of assumption of risk as follows:
"The defense of assumption of risk presupposes (1) that the plaintiff had some actual knowledge of the danger; (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk. Therefore, except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character, or the danger involved, including the magnitude thereof, and voluntarily accepts the risk." 57 Am.Jur.2d, Negligence, § 281, p. 674 (1971).
See also Harper and James, The Law of Torts, Vol. 2, Chapter XXI (1956); Prosser, Handbook of the Law of Torts, § 68, pp. 439-457 (1971).
JONES, Justice (dissenting in part):
In addition to those facts stated in the original opinion reversing this case, we cite these matters proven by the testimony of appellee himself. He was traveling north as stated and overtook the decedent whom he saw and followed for a block and a half before striking him. Decedent was walking on the right-hand side of the pavement and parallel to it. Decedent gave no sign of being aware of the approach of appellee's car. This was a two-lane interstate highway. There was no other car in sight either north or south of the parties. It *415 was in February, cold, raining and snowing. Appellee was traveling 30 or 35 miles per hour. While appellee saw decedent and for a block and a half knew that he was beside the pavement, appellee did absolutely nothing to advise decedent that the car was there and took no steps for the protection of decedent. He did not appreciably, if any, slow his speed, did not sound his horn, or turn his car to the left. He testified that when he, appellee, got about half a car length from decedent, he, the decedent, stepped over in the highway and the right corner part of the car struck him when he had come only about a foot or foot and a half into the road. Suppose appellee had moved his car one foot to the left of its course! There was plenty of room for the car to travel to the left of the pedestrian.
Even before repeal of Section 5574, Code of 1930, this Court, through Justice Griffith, made some findings that are pertinent here:
We have often heretofore stated in the written opinions of this court that automobiles have become of such general use and form so largely a part of the daily lives and experiences of our people that judicial knowledge may be taken of those prominent facts in respect to them or their operation which are a part of the common knowledge of every person of ordinary understanding and observation. We may accordingly take notice of the fact that it is common observation in the operation of automobiles that the requirement of the statute that pedestrians shall walk on their left-hand side of the road has not yet been translated into a common practice of the people, and that frequently pedestrians are found walking on their right-hand side, as was formerly the legal custom; but that, when so walking on their right-hand side and an automobile horn is sounded or they otherwise become aware of the approach of an automobile behind them, they often, and nearly always when there is a ditch on the right-hand side, quickly step or jump to their left in response to the instant impulse or reaction that the car is approaching on its right-hand side, and that is exactly what happened in this case, and what the driver as a reasonably prudent person should have anticipated would happen.
It was the duty of the driver of the automobile in this case to keep to his right. As soon as he observed the pedestrian walking on that side, with his back to the automobile, it was the duty of the driver to sound his horn, and to continue at short and frequent intervals to sound the horn until he observed that the pedestrian had become aware of the approach of the automobile. And, when it was observed that the pedestrian continued unaware, it was the duty of the driver to apply his brakes and to slow down, and to come to a stop, if necessary, before the pedestrian was reached. There was adequate time and opportunity within the 150 to 175 feet mentioned for the driver to have met all the requirements above stated and thus to have avoided the injury or rendered it improbable, and no case of sudden emergency is presented by the facts. The stated measure of duty has been applied even as to railroads and in favor of trespassers on their tracks, as, for instance, in Yazoo & M.V. Railroad Co. v. Lee, 148 Miss. 809, 114 So. 866. The driver of the automobile fell far short of that duty in this case, as his own testimony and that of his witnesses disclose and beyond room for sustainable argument to the contrary. (Avery v. Collins, 171 Miss. 636, 644-645, 157 So. 695, 697 (1934).
I call attention again to those quotes from Layton v. Cook, 248 Miss. 690, 696-697, 160 So.2d 685, 687 (1964):
In the absence of a statute to the contrary, a pedestrian has the right to use and travel upon any portion of a public highway at any time of the day or night, "and his rights and the rights of one operating *416 a vehicle thereupon are mutual, reciprocal, and equal." The operator of a motor vehicle owes to pedestrians walking along the highway the duty to exercise reasonable or ordinary care to avoid injuring them. Hence a motorist is guilty of negligence where he strikes a pedestrian walking along the highway, where in the exercise of reasonable care he should have but did not see him and could have avoided the accident. 7 Am.Jur.2d, Automobiles and Highway Traffic, § 400.
The operator of a motor vehicle must anticipate the presence of pedestrians walking along the side of a highway or street. And under circumstances such as existed here, ordinary care on the part of a motorist requires that he give a reasonable and timely warning upon approaching a pedestrian in or walking along the side of a roadway. Ibid., §§ 401-402. 7 Am.Jur.2d, Ibid., § 404 states: ...
Layton v. Cook, supra, was cited with approval in Stewart v. White, 220 So.2d 271 (Miss. 1969) where the Court said:
The proper standard is the exercise of ordinary care on the part of the driver of an automobile to observe persons or objects within his traffic lane or in close proximity thereto, and to avoid injury to persons or property when they come within his vision or under his observation. (220 So.2d at 273).
Remembering that appellee testified that the accident happened about one and one-half feet over on the pavement, we believe this statement by the Louisiana Court of Appeals in Kelly v. Ludlum, 9 La. App. 57, 118 So. 781 (1928), writ of certiorari and review denied by Supreme Court (October 2, 1928), is in point:
The driver of the automobile had a clear view of the situation as the car approached plaintiff, and there was ample time, distance and space for him to have changed the course of the automobile so as to allow a greater margin of safety, and, when the plaintiff apparently did not notice the signals given he was bound to realize the hazard of driving the automobile so close to plaintiff due to the fact that plaintiff might deviate from his course or that he might be taken unawares by the sudden discovery of the automobile and make such a deviation as to bring him in front of the automobile. Blashfield, Automobiles, vol. 1, p. 597.
Each of the parties had the right to use the highway, but the danger of hazard from a collision was much greater for plaintiff than for the driver of the automobile, and the driver was bound to take notice of the danger and to drive the automobile accordingly; that is, the driver of the automobile was charged with notice that plaintiff might vary slightly from his course or that he might be taken unawares by the discovery of the automobile in close proximity to him and involuntarily place himself in front of the automobile, and the evidence showing that the driver operated the car with such danger in view and that the accident resulted from the danger which should have been anticipated by the driver of the automobile, the owner of the automobile, under whose direction the automobile was being operated, was liable.[1] (9 La. App. at 58, 118 So. at 782).
Also, as said in 7 Am.Jur.2d Automobiles and Highway Traffic section 406, page 954 (1963):
Negligence may be found from the fact that the operator of a motor vehicle drives too near to a pedestrian walking along the side of the highway, running into him. A motorist may be found guilty of negligence in allowing too narrow a margin of safety in passing, so that when a pedestrian walking along the side of the highway varies his course *417 slightly, he is struck by the vehicle. A motorist who negligently changes his course and drives his car in such close proximity to a pedestrian walking along the side of the highway that the pedestrian is struck by the door of the car, which is open, is liable for the injury whether or not he caused the door to be open.
A motorist may also be found guilty of negligence in driving in such a manner or direction that the vehicle or trailer attached thereto sways or swerves so that it strikes a pedestrian who is walking along the side of the highway.
I again cite 7 Am.Jur.2d Automobile and Highway Traffic section 401, page 950 (1963) where it is said:
The operator of a motor vehicle must anticipate the presence of pedestrians walking along the side of the highway or street, although they are not ordinarily expected to anticipate the presence of pedestrians walking along the middle thereof, or in the center of their lanes of travel. In other words, motorists must expect to find and be alert to discover pedestrians on the sides of the road, and where there are no sidewalks, must expect to find such travelers actually in, but at the sides of, the road. There is, moreover, some authority to the effect that even though the operator of a motor vehicle knows that there is a sidewalk in good condition paralleling the road on which he is driving, it is, nevertheless, his duty to anticipate the presence of pedestrians on the portion of the highway used by vehicular traffic. (Emphasis added.)
Chapter 200, Laws of 1938 repealing Section 5574, Code of 1930 (Section 8202, Code of 1942 Annotated) fixes rules regarding pedestrians, none of which would be applicable here, except section (d) thereof, reading:
(d) Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.
Section 8250, Mississippi Code 1942 Annotated (1956) is applicable as we see it:
... The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway... . (Emphasis added.)
It should be noted that this sentence is different from the provisions of Section 8202 in that it requires the blowing of a horn when reasonably necessary to insure safe operation.
To insure means, according to Black's Law Dictionary 946 (4th ed. 1951), "To make sure or secure, to guarantee, as, to insure safety to anyone."
To insure safe operation would certainly require, when appellee was following decedent for a block and a half, overtaking him, and seeing he was unaware of the approach of the car, that he do something  sound the horn, turn to the left, or stop. The life of this human was far more important than the infinitesimal energy required to do either of these things.
It is my opinion that appellee was at least guilty of negligence that contributed to the death, and the jury should have been so instructed.
I am also of the opinion that the facts in this case would have warranted an instruction directing the jury to find the defendant guilty of negligence.
RODGERS, P.J., concurring.
NOTES
[1] The deviation involved in this case was two feet rather than one and one-half feet.