ROBERTS, J.,
for the Court.
SUMMLARY OF THE CASE
¶ 1. This wrongful death action arose after a collision between an automobile and a riding lawnmower. Charlie Lias operated the lawnmower and subsequently died after his collision with Gay Flowers’s automobile. Richard Lias filed a wrongful death action on Charlie Lias’s behalf. The matter proceeded to trial. Ultimately, the trial court granted Flowers’s motion for directed verdict at the close of Richard’s case-in-chief. Richard filed an unsuccessful motion for new trial. Aggrieved, Richard appeals and claims the circuit court erred when it granted Flowers’s motion for directed verdict. Finding no error, we affirm.
FACTS
¶ 2. On September 22, 2000, Charlie Lias, eighty-one-years old, drove his riding lawnmower southbound on Old Highway 49 in Mattson, Mississippi. Mr. Lias was on his way to his church. He intended to mow the church grounds.
¶ 3. Ms. Gay Flowers left a morning prayer service and was on her way back home. As she traveled southbound on Old Highway 49, a two-lane state highway, she recognized Mr. Lias. Flowers testified that Mr. Lias made an sudden unexpected U-turn across the highway. According to Flowers, she veered left and tried to avoid Mr. Lias, but Mr. Lias drove his lawnmower into the side of her car. As a result of the collision, Mr. Lias was thrown from his lawnmower. Flowers testified that imme *339 diately after the collision, Mr. Lias recognized his neighbor Flowers and stated, “I’m sorry Ms. Gay.” Flowers arranged for an ambulance response. As she waited, community acquaintances arrived. Mr. Lias got up and waited in the cab of a friend’s pickup. When the ambulance arrived, Mr. Lias got in the ambulance and went to the hospital emergency room. Mr. Lias’s son, Byrd Lias, went to the hospital with Mr. Lias and subsequently drove Mr. Lias home.
¶ 4. Byrd noticed that his father was acting unusual, but Byrd attributed Mr. Lias’s behavior to pain medication he received at the hospital. Later that day, Byrd got a call from his sister, Lizzie Lias. Lizzie told Byrd that their father was being airlifted to a hospital in Memphis. Unfortunately, Mr. Lias passed away as a result of a subdural hematoma, a head injury that had not been initially diagnosed at the emergency room. Although irrelevant to the present issue, testimony from Dr. John Lancon indicated that Mr. Lias’s death was not caused by the lawnmower accident, but instead was the result of “brain hemorrhage due to hypertension or high blood pressure, as well as the taking of blood thinners for which he was taking two blood thinners and a condition called amyloid angiopathy of the elderly.”
¶ 5. The day after the accident, Deputy Billy Baker of the Coahoma County Sheriffs Department was dispatched based on Mr. Lias’s death after an automobile collision. Deputy Baker went and spoke to Mr. Lias’s family. During Deputy Baker’s investigation, Flowers visited the Lias family to offer her condolences. While Flowers was there, Deputy Norman Harris interviewed Flowers. Deputy Harris then constructed an accident report. According to that accident report, Flowers was driving approximately forty miles per hour at the time of the accident. About a month later, Flowers called Officer Baker and explained that she was mistaken about her speed. Flowers told Officer Baker that she could not have been going forty miles per hour when she hit Mr. Lias. Flowers said that she did not have enough time to reach that speed because she had recently gone through a stop sign.
PROCEDURAL HISTORY
¶ 6. On December 5, 2002, Richard Lias filed a wrongful death action in the Coaho-ma County Circuit Court. Richard claimed that Flowers negligently caused Mr. Lias’s death. Richard requested five million dollars in compensatory damages and five million dollars in punitive damages. Flowers denied liability. The matter proceeded to trial on August 30, 2004.
¶ 7. Richard called Flowers as an adverse witness. She was the only eyewitness to the collision who testified. On direct, Flowers testified that she had seen Mr. Lias as he drove his mower down the highway. She testified that she knew to look out for Mr. Lias because he was elderly, did not hear well, did not see well, and behaved unpredictably. She did not know how much time passed from the moment she first saw Mr. Lias until the accident. She could not predict the distance at which she saw him, but she testified that the distance was less than half a mile. Flowers also testified that the sky was overcast and that it had barely begun to rain at the time of the accident.
¶ 8. Flowers further testified that Mr. Lias drove on the shoulder of the highway. Richard’s attorney asked Flowers whether she told Deputy Baker that Mr. Lias was partly on the shoulder and partly on the pavement. Flowers responded that she was not certain whether she said that to Officer Baker. Flowers attempted to clarify her recollection of Mr. Lias’s position on or near the road. Flowers testified, *340 “[h]e was on the shoulder of the road, but then when he started U-turning, he was partially on the pavement, partially on the highway, and as he U-turned, he came back into the center of the road.”
¶ 9. As for her speed, Flowers testified that she told Officer Baker that she was going forty miles per hour, but she corrected herself because she timed herself several times from the dead stop. In particular, Flowers testified, “I went over and over it several times, and I was at a dead stop, and by the time I got to him, when I saw him, I had slowed up even more. So I couldn’t have been going probably even 20 when I got to him actually. But when the officer asked me that, I just off the top of my head said, you know, BO, 40. I don’t know.”
¶ 10. Flowers testified as to the sequence of events surrounding the collision. According to Flowers, “I was behind him when he started making the U-turn, and I started veering as hard as I could to get out of his way to try to avoid him.” Flowers elaborated, “When I started approaching him, I started moving over just for safety’s sake, but then when he started U-turning, I started veering hard and headed toward the bayou and squealing on brakes to try to keep from going into the bayou myself, and when he hit, he hit my right front tire.” As for her position in the road at the point of impact, Flowers testified, “Actually when he hit it was almost in the middle because I was veering, and he — he was thrown into the middle of the road off his tractor.”
¶ 11. On cross-examination, Flowers’s attorney asked her to describe her version of events. Flowers testified:
I was on my way home from church, and I came into Mattson, stopped at the three-way stop, and as I approached the store — well, I got to the store, and a little past the store, I saw Mr. Charlie on his riding lawn mower, and I assume he was going to cut the grass, because that was — he used that lawn mower as his transportation because I don’t know if the children had taken his car away from him, but he didn’t have a car, and he used it to go to the store in Dublin or he went to the church which was just like not even a quarter of a mile past my house.
And he was headed down the road on the shoulder of the road, and when I saw him — I mean after I came out of the three-way stop, when I saw him, I started slowing up. As we’ve said, he was kind of unpredictable, and a lot of the people in our area would, you know, attest to that. But when I saw him, I started easing over, and before I got parallel with him, it started sprinkling, and he didn’t look back, and he made a u-turn right in the middle of the road. And when I saw him u-turning, I started veering to the left, and he hit the right side of the front of my car, and I think there are pictures of where all of the red on the tractor are right on my right front tire, and I did everything I could to avoid him. I have replayed it several times. I have even thought, you know, if I had sped up, maybe I could have gotten past him, but I couldn’t. I could not avoid him.
¶ 12. Flowers also testified as to her position after the accident. Flowers explained that when she stopped, her ear was pointed southeast in the northbound lane. That is, she veered into the oncoming left lane and came to a stop at an angle, as if she were headed off the left side of the road. The lawn mower came to rest in the middle of the road. Flowers went on to testify that Mr. Lias hit the right side of her car with the front of his lawnmower. She testified that she had no damage to the front of her car, but her right front *341 tire blew out. Flowers testified that Mr. Lias was thrown off his tractor and he landed “pretty much right in the middle of the road.”
¶ 13. Richard called Officer Billy Baker. Primarily, Officer Baker’s testimony distinguished Flowers’s version of events. Officer Baker testified that, when he spoke with her the day after the accident, Flowers told him that Mr. Lias operated his lawnmower so that the two left wheels were on the pavement of the road, while the two right wheels were on the shoulder. Officer Baker also testified that the accident report incident to the collision indicated that Flowers said she was going forty miles per hour at the time of the accident. The accident report also showed that Mr. Lias turned across Flowers’s path and that Flowers swerved left into the northbound lane in effort to avoid a collision. On cross-examination, Officer Baker testified that, on October 23, Flowers called him and said she was mistaken when she told Deputy Harris that she was going forty miles per hour. She said she could not have been going that fast because she had just stopped at a stop sign.
¶ 14. At the conclusion of Richard’s case, Mrs. Flowers requested a directed verdict. The circuit court found:
there was really nothing else that Ms. Flowers could do under the circumstances, regardless of whether you believe the mower was partially on the highway or partially off. When you look at the photographs of the highway ..., the composite exhibits of the damage to the vehicle, the Cadillac car with a little red paint on the front right-side of the ... Defendant’s car — the Defendant testified that it blew her tire out, and you look at the frontal damage on the red Rally lawnmower operated by the deceased, Mr. Charlie Lias, ... this Court can only conclude that two good people were involved in an accident, that Mr. Lias was on his way to cut grass at his church, that it began to sprinkle a little bit, and he decided, for whatever reason, to make a U-turn just as Ms. Flowers was going south on Highway 49, that the front of the lawnmower made contact with the right-front side of the car lightly, enough to leave a little red paint on it, but collided — apparently the impact was to the tire, which blew the tire out. The Court notices the frontal damage, and the testimony was that the — somewhere in the record is that the hood flew off.
The only version of the facts came from Ms. Flowers herself who said she had been to a prayer meeting of sorts at eight o’clock in the morning at her church and was on her way home somewhere around 9:30, both of them going south. She said that as she approached, she slowed down, that as he began to turn, that she veered to the left as hard as she could and threw on brakes but could not avoid the accident, the mower colliding with the front right tire, obviously both vehicles stopping quickly. The lawnmower obviously stopping quickly, causing Mr. Lias to be thrown to the ground. He didn’t die at that time.
This Court does not have to reach the battle of the experts as to exactly what caused his death because to get to that we have to first get by liability. The Court finds that there is no proof of negligence, that Plaintiff is unable to support the burden that the Plaintiff would have to show negligence on the part of the Defendant in this case, and for that reason — and the Court, finding that the exhibits introduced into evidence support the Defendant’s version of the facts, finds that the motion for directed verdict should be granted.
*342 ¶ 15. Accordingly, the circuit court granted Mrs. Flowers’s motion for directed verdict. Following Richard’s unsuccessful motion for new trial, Richard appeals.
STANDARD OF REVIEW
¶ 16. This Court conducts a de novo review of a motion for directed verdict. Morgan v. Greenwaldt, 786 So.2d 1037(¶ 10) (Miss.2001) (citing Northern Elec. Co. v. Phillips, 660 So.2d 1278, 1281 (Miss.1995)). If we find that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted. Id. An issue should only be presented to the jury when the evidence creates a question of fact on which reasonable jurors could disagree. Id.
ANALYSIS
I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED MRS. FLOWERS’S MOTION FOR A DIRECTED VERDICT.
¶ 17. Richard claims the trial court failed to consider the evidence in the light most favorable to him. Richard submits that he presented evidence that created a question of fact over which reasonable jurors could disagree. Richard raises the following points: (a) that Flowers’s speed contributed to the accident, (b) that Flowers did not sound her horn properly, and (c) that Flowers did not use reasonable care in passing Mr. Lias.
A. Speed.
¶ 18. Much of Richard’s argument on appeal is dedicated to Flowers’s speed. Officer Baker testified that, according to Flowers on the day after the accident, she was going forty miles per hour at the time of the accident. Richard points out that the posted speed limit along that section of Old Highway 49 was thirty miles per hour. At trial, Flowers testified that she could not have been going forty miles per hour because she did not have sufficient time to build up that speed. She testified that she was upset on the day after the accident and that she was mistaken about her speed.
¶ 19. Assuming that Flowers was going forty miles per hour, there is nothing about Flowers’s speed that indicates that she did not keep a proper lookout over Mr. Lias. Instead, all the evidence shows that Mr. Lias made an unexpected sudden U-turn into the side of Flowers’s car. Richard cites Louisville & N.R. Co. v. Garnett, 129 Miss. 795, 93 So. 241 (1922) and suggests that this case is on point. In Louisville, a man died after a train struck him. Louisville, 93 So. at 242. The decedent walked along a railroad track and never walked between the rails. Id. Rather, either a part of the train called a “pilot beam” or a “cylinder” struck the decedent. Id. The evidence indicated that the train was going between fifteen and twenty-five miles per hour, instead of what appears to be the recommended speed or perhaps the speed limit of six miles per hour. Id. The Louisville court held that, had the train not exceeded six miles per hour, “certainly the blow would have been with very much less force than it was while running at a speed of from 15 to 25 miles an hour; it might have done him little if any harm.” Id. However, in this case we are not dealing with a difference between six and fifteen or twenty five miles per hour; nor are we dealing with a train or a pedestrian that merely walked next to a railroad. The decedent in Louisville did not drive into the side of the train.
¶ 20. Flowers correctly cites McFarland v. Leake, 864 So.2d 959 (Miss.Ct.App. *343 2003). In McFarland, this Court found that a trial judge did not err when he awarded summary judgment in favor of a defendant incident to an automobile accident where the plaintiffs sole contention was an affidavit from an accident recon-structionist that stated the defendant’s speed exceeded the limit by ten miles per hour. Id. at (¶ 6). This Court held that even if the defendant exceeded the speed limit by ten miles per hour, the plaintiff failed to demonstrate evidence of causation that related that speed to the wreck. Id.
¶ 21. Richard suggests that in McFarland, this Court “was seduced into error by its misplaced reliance on” Havard v. State, 800 So.2d 1193 (Miss.Ct.App.2001). McFarland’s reliance on Havard was simply to illustrate a point. That is, it is not enough to simply show that a party committed some misdemeanor traffic offense. Rather, a party must demonstrate that the speeding “must still be shown to have been the cause of the accident.” McFarland, 864 So.2d at (¶ 6) (citing Havard, 800 So.2d at (¶ 15)). Here, Richard has patently failed to demonstrate just how Flowers’s speed contributed to Mr. Lias’s sudden U-turn into the side of her car. As such, we find no reversible error.
B. Horn
¶ 22. According to Richard, Flowers failed to sound her horn and thereby failed to warn Mr. Lias of her presence. Richard cites language from the Mississippi Code which holds, “[t]he driver of a motor vehicle shall, when reasonably necessary to insure safe operation, give audible warning with his horn.... ” Miss.Code Ann. § 63-7-65(1) (Rev.2004). Richard also cites Smith v. Walton, 271 So.2d 409 (Miss.1973) and claims that Smith supports his contention that the trial judge erred when he sustained Flowers’s motion for a directed verdict.
¶23. In Smith, the Mississippi Supreme Court reversed a jury verdict in favor of a defendant motorist who struck a pedestrian as he walked along the side of the road. Id. at 414. The defendant in Smith testified that he first saw the plaintiff about a block away “but did not sound his horn and really didn’t pay too much attention” to the plaintiff. Id. at 411. When the plaintiff was half a car length away from the plaintiff, the plaintiff “suddenly stepped or jumped over on the highway.” Id. The defendant tried to swerve left away from the plaintiff, but the right corner of the defendant’s car hit the plaintiff. Id. Further facts indicated that it was dark at the time, that it was snowing and raining, that the defendant continued to drive near the edge of the pavement after he saw the plaintiff, and that the defendant was about a foot or a foot and a half on the highway when he struck the plaintiff. Id.
¶ 24. The supreme court reversed the jury’s verdict based on improper jury instructions. Id. at 414. In particular, the supreme court found that one jury instruction stated that the law required the plaintiff to walk on the left side of the road, when that particular law had been repealed. Id. at 413. The supreme court also found that a jury instruction failed to announce the law as stated in two statutes pursuant to the former Mississippi Code of 1942. Id. One of those two statutes, the former Section 8202(d), stated that “every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary.” Id. The other statute, formerly Section 8250, provided that “[t]he driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn when upon a highway.” Id. The supreme court found that the instructions did not reflect the relevant statutes. Accordingly, the supreme court reversed *344 the jury’s verdict and remanded for a new trial.
¶ 25. Richard contends that Smith supports his assertion that a directed verdict was improper. We disagree. Smith is distinguishable from the present matter. Primarily, while the defendant in Smith struck a pedestrian, in the case sub judice, Mr. Flowers drove a lawnmower into the side of a motor vehicle. What is more, there is no absolute duty to sound one’s horn in the process of overtaking a vehicle. Clark v. Mask, 232 Miss. 65, 73-74, 98 So.2d 467, 471-72 (1957); Miss.Code Ann. § 63-7-65(1). Instead, the law requires the sounding of a horn “when reasonably necessary to insure safe operation.” Miss. Code Ann. § 63-7-65(1). There is no indication that, prior to Mr. Lias’s unexpected spontaneous U-turn, there was a reasonable need for Flowers to sound her horn. Rather, until Mr. Lias made his unexpected U-turn, the undisputed proof shows that Flowers moved over to her left and that she would have proceeded past Mr. Lias without incident. Perhaps Mr. Lias would not have made that U-turn, had Flowers sounded her horn, but such a holding would place a duty on motorists to accurately predict sudden and unexpected actions, while motorists are only held to a duty of reasonable care. Turner v. Turner, 524 So.2d 942, 947 (Miss.1988). There was no evidence that Flowers acted contrary to her duty.
¶ 26. Moreover, there was no evidence that Flowers hit Mr. Lias. Instead, all the evidence clearly indicates that Mr. Lias made an unpredictable U-turn into the side of Flowers’s car. Photographs of the scene reveal light damage to the front right quarter-panel of Flowers’s car. Those photographs also show significant damage only to the front of Mr. Lias’s lawnmower. The accident report shows that Mr. Lias hit Flowers’s car approximately in the center of the roadway. That supports Flowers’s contention that Mr. Lias made an unpredictable U-turn into her path.
C. Due Care in Passing
¶ 27. Finally, Richard alleges that (a) Flowers failed to attempt to drive her automobile into the northbound lane in anticipation that Mr. Lias might have driven his lawnmower further into the southbound lane and (b) Flowers failed to stay behind Mr. Lias until it was safe to pass him. Richard also notes that Byrd and Lizzie Lias testified that their father habitually rode his lawnmower on the pavement of the highway. That may very well be, but Flowers’s testimony, the only testimony of the facts of the accident, was that Mr. Lias rode on the shoulder of the highway or that Mr. Lias had his two left wheels on the highway and his two right wheels on the shoulder. Since we examine all inferences in Richard’s favor, we assume that Mr. Lias was halfway on the highway and halfway on the shoulder.
¶ 28. Even under that assumption, we must affirm the trial court’s decision. As mentioned, no evidence indicated that Flowers was negligent. Rather, Flowers testified that she slowed down and eased over when she saw Mr. Lias. That testimony indicates that Flowers kept a reasonable and proper lookout. It is undisputed that Mr. Lias made a sudden and unexpected U-turn across the highway and that he collided into the side of Flowers’s car as she attempted to avoid him. Flowers nearly drove off the left side of the road, but was unable to avoid Mr. Lias. No evidence suggests that Flowers was negligent in the amount of space she gave Mr. Lias or in attempting to pass. We find no reversible error.
¶ 29. THE JUDGMENT OP THE COAHOMA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS *345 APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ, SOUTHWICK, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.