## Louisville & N. R. Co. v. Garnett *et al.*

[93 South. 241. In Banc. No. 22488.]

1. REMOVAL OF CAUSES. *Action for more than three thousand dollars, brought in state where both parties nonresidents, not removable to federal District Court.*

    Under the provisions of section 24, 28, and 51 of the Federal Judicial Code (U. S. Comp. St., sections 991, 1010, 1033), a cause involving more than three thousand dollars between citizens of different states, brought in the court of a state of which both parties are nonresidents, is not removable to the federal district court for the district in which such state court is located.

2. RAILROADS. *Negligence as to person killed on track held for jury.*

    Where deceased for whose death suit is brought was run down and killed by defendant's locomotive within the corporate limits of a municipality while such locomotive was exceeding the speed limit prescribed by statute, it was not error in the trial court to refuse to direct a verdict for the defendant, although it was impossible to stop the train before striking the deceased when his danger appeared, where the evidence tended to show that the locomotive when it struck deceased was running at from fifteen to twenty-five miles an hour, and deceased when struck was not between the rails but on the outside near the ends of the cross-ties, and was struck by the pilot beam or cylinder of the engine, because such facts might reasonably authorize the jury to infer that if the speed limit had not been exceeded the blow would have been less violent and not have caused the death of deceased.

3. DEATH. *Charge on measure of damages held erroneous.*

    In a suit for damages in a death case it is error for the court to instruct the jury for the plaintiffs that if they should return a verdict in their favor the measure of their damages is the present value of the life expectancy of the deceased, because the present value of the life expectancy of the deceased is the discount value of such life expectancy at six per cent. per annum, the prevailing noncontract rate of interest, on such life expectancy for the period it has to run, not taking into account the living expenses of deceased, which should be deducted.

4. APPEAL AND ERROR. *Charge as to measure of damages for wrongful death, where deceased contributed largely to cause, held prejudicial error.*

In a case where the evidence shows that a very much larger part of the wrong which caused the death of the deceased was attributable to him and not to the railroad company, and under the other evidence in the case that the verdict returned by the jury is large, the giving of such an instruction is harmful and denied the defendant a substantial right, and is reversible error.

Holden, J., dissenting.

Appeal from circuit court of Harrison county.

Hon. D. M. Graham, Judge.

Suit by N. J. Garnett, Sr., and others, against the Louisville & Nashville Railroad Company. From judgment for plaintiffs, defendant appeals. Reversed and remanded for a new trial on question of damages alone.

*Smith, Young, Leigh & Johnson,* for appellant.

The fifth assignment of error is to the giving of the following charge: The court instructs the jury for the plaintiffs that, if you find for the plaintiffs, the measure of their damages is the present value of the life expectancy of the deceased. The amount, if you find for the plaintiffs, should be fair and reasonable as the evidence may show, if any, to compensate them for the death of said deceased, Garnett, not to exceed the sum of sixty thousand dollars ($60,000).

This charge contains two separate and distinct propositions, which are: (1) Not consistent, the one with the other; (2) Each is erroneous. *Gulf & Ship Island R. R. Co. v. Boone,* 120 Miss. 632, (82 So. 335); *Mississippi Oil Company v. Smith,* 95 Miss. 528 (48 So. 735) and *Cumberland Telephone & Telegraph Co. v. Anderson,* 89 Miss. 732, 41 So. 263. Plaintiffs had a right to recover the present value of the deceased's own life expectancy. *Mississippi Oil Co. v. Smith,* 95 Miss. 528, 48 So. 735; *Telephone Co. v. Anderson,* 89 Miss. 732, 41 So. 263; *New Deemer Mfg. Co. v. Alexander,* 122 Miss. 859, 85 So. 104, states the measure of damages as it is stated in the case of *Gulf & Ship Island R. R. Co. v. Boone, supra,* but the headnote is not supported by the opinion.

The appellant's attorneys in the above case strenuously and ably insisted that the first element of damages included in the court's charge was erroneous because it did not make any deductions for the support of the deceased and thereby made the deceased more valuable dead than alive. (See 122 Miss. 874 to 877). In this connection, the court said: "In other words, the jury were told they must find the present value of all that Alexander would have earned during his expectancy, and then, in addition to all he would have earned, such further amount as it would take to support his wife and children until the children should reach their majority and as long as the wife lived, thus making the momentary value of his life not only what he would have earned, without diminution for his own support, but also such additional amount as it would take to support his wife and children."

In view of the argument of the appellant's attorneys, and the words of the opinion which we have underscored, it is clear that the court intended to hold that the charge was erroneous for the reason, as well as others, that it made no diminution for the support of the deceased.

This is made still plainer by the fact that the appellee's attorneys in the New Deemer case insisted that the instructions were warranted by the case of *Cumberland Telephone & Telegraph Co. v. Anderson*, 89 Miss. 732, and the court after quoting from that case, said: "The language quoted is misleading because the opinion does not point out what was evidently in the minds of the court, that the son's expectancy should be measured and valued with reference to other elements of damages. He would not recover the earnings of that part of his life which belonged exclusively to his mother. All these elements named are proper to be considered by the jury, but, in the language of the statute, after the jury has considered these various elements, the jury find such amount as it may determine to be just, taking into consideration all of the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.

The general rule is thus stated in 8 Ruling Case Law, sec. 104, p. 826: "The measure of damages under most of the statutes giving a right of recovery for the wrongful death of a person is the present value of the reasonable expectation of pecuniary advantages to those entitled to recover and which they have lost by his death, or as it is sometimes expressed, it is the amount of pecuniary assistance and support which they might reasonably have expected to receive from the deceased had he lived. *Davis* v. *McCullough,* 89 So. 158; *Yazoo & M. V. R. Co.* v. *Williams,* 114 Miss. 206, 74 So. 835; *Gulf & Ship Island R. R. Co.* v. *Anderson,* 117 Miss. 118, 77 So. 854.

The second sentence of the charge does not state a correct legal proposition.  The second sentence of the charge is likewise an erroneous statement of the measure of recoverable damages, in that it charges the jury that the amount of damages should be fair and reasonable to compensate them for the death of the deceased.  Compensation necessarily involves mental anguish and distress caused by the untimely death of a deceased by violence, as well as the pecuniary loss sustained by the plaintiff by reason of such death.  The distinction between compensation for mental suffering and anguish and the pecuniary loss arising from the loss of protection and society of a husband and father is fully recognized by this court and it is held that compensation can be had for such pecuniary loss, but not for the mental suffering and anguish. *Telephone Co.* v. *Anderson,* 89 Miss. 732, 41 So. 663; 17 Corpus Juris, p. 1337.

Eighth assignment of error: The court erred in refusing to instruct the jury to find a verdict for the defendant.  In other words, under the evidence in this case, the defendant was entitled to the peremptory instruction in its behalf.  We fully realize that the evidence must be considered in its most favorable aspect to the plaintiffs in discussing this question, but, even then, it does not show any liability on the part of the defendant.  The plaintiffs relied upon two acts of negligence, viz: excessive speed and failure to give the proper signals. *Ala. & V. R. Co.* v. *McCoy, et al.,*

105 Miss. 737, 63 So. 221; *Moorehead* v. *Yazoo & M. R. Co.,* 36 So. 151.

Ninth assignment of error: The court erred in refusing the following charge requested by the defendant: "The court instructs the jury that, even if you believe the train was going over six miles an hour after it entered the city limits of Biloxi, it cannot be relied upon to show negligence in this case, unless the train was going over six miles per hour at the time the deceased was seen in a place of danger."

This charge was requested to meet an argument by the plaintiffs' counsel that, had the train not been going over six miles an hour after it entered the city, the accident would never have happened, because the deceased, Garnett would not have been in that place. The charge is clearly in accord with the law as announced in the case of *Louisville & Nashville R. R. Co.* v. *Dick,* 95 Miss. 111, 48 So. 401. The petition for removal to the United States district court should have been granted.

The first four assignments of error raise the proposition that the lower court erred in refusing to enter an order removing this cause to the district court of the United States. A proper petition for removal was made and accompanied by bond which was approved by the court. An order was entered denying such motion, reciting that the petition for such removal was in due form and according to law, and that the bond was approved.

This petition for removal shows that the plaintiffs in the case were citizens of the state of Alabama while the defendant was a citizen or resident of the state of Kentucky. The question that arises, therefore, is: Can a cause be removed where there is diversity of citizenship, but where neither party resides in the southern district of Mississippi?

The district courts of the United States are given jurisdiction of all suits of a civil nature at common law or in equity . . . where the matter in controversy exceeds three thousand dollars . . . and is between citizens of different states. See sec. 24, Judicial Code (Acts March

3, 1911), chap. 231; 36 Statutes at Large, 1091; Compiled Statutes 1916, sec. 991; Sec. 51, Compiled Statutes, 1916, p. 1033; Sec. 28, Compiled Statutes 1916, sec. 1010; U. S. v. *Sayward,* 160 U. S. 493; *Holt* v. *Indiana Mfg. Co.,* 176 U. S. 68; *Ex Parte Schollenberger,* 96 U. S. 369.   Chief Justice WAITE says: *First Nat. Bank* v. *Morgan,* 132 U. S. 141; *McCormack Harvesting Mach. Co.* v. *Walthers,* 134 U. S. 41; *St. Louis Ry. Co.* v. *McBride,* 141 U. S. 127; *K. C. & T. C.* v. *Interstate Lbr. Co.* (C. C.), 37 Fed. 3; *Brewer* v. *First Nat. Bank case* (C. C.), 41 Fed. 581; *Amsinck Case* (C. C.), 41 Fed. 641 (Gray); *Uhle Case* (C. C.), 42 Fed. 1; *Crocker Nat. Bank Case* (C. C.), 44 Fed. 705; *Shirwood Case* (C. C.), 55 Fed. 1; *Long Case* (C. C.), 91 Fed. 417; *Stalker Case* (C. C.), 83 Fed. 989; *Creagh Case* (C. C.), 83 Fed. 769; *Whitworth Case* (C. C.), 107 Fed. 557; *Virginia-Carolina Chemical Co. Case* (C. C.), 108 Fed. 451; *Rome Petroleum & Iron Co. Case* (C. C.), 130 Fed. 585; *Roberts Case* (C. C.), 139 Fed. 1001; *Iowa Lilloet Gold M. Co. Case* (C. C.), 144 Fed. 446.

An alien can maintain a suit against a citizen of the United States in the district in which the defendant resides.   See section 51 of the Judicial Code.   *Barlowe* v. *Chicago, etc., R. R.,* 72 Fed. 513; *McAuley* v. *Moody,* 185 Fed. 144; *Adzenoska* v. *Erie R. R. Co.,* 210 Fed. 571; *Lehigh Valley Co.* v. *Washko,* 231 Fed. 42; *Guzma* v. *Witherbee,* 232 Fed. 286.

So, under the above statutes, where an alien sues a citizen in a United States court the amount in controversy must be in excess of three thousand dollars and the suit must be brought in the district of the residence of the defendant.   *Boise Commercial Club* v. *Oregon Short Line R. R. Co.,* 260 Fed. 769; *James* v. *Amerillo, etc., Co.,* 251 Fed. 337; United States in 247 U. S. 305; *Guaranty Trust Co. of N. Y.* v. *McCabe,* 250 Fed. 699.

In conclusion, we wish to submit an expression of the supreme court of the United States in the matter of Matthew Addy Steamship & Commerce Corporation, cited *supra,* which shows that the supreme court consider the

question before this court as not controlled by the Wisner and Moore cases. In the last paragraph of this opinion Mr. Justice CLARKE, speaking for the supreme court says: "The conflict of opinion in the lower courts with respect to the right of removal from a state court of a case in which the opposing parties are citizens of different states, and neither is a resident of the state in which the case is commenced, is much to be regretted; but paragraph 28 of the Judicial Code is controlling, and Congress alone has power to afford relief.

We therefore submit that, for the reasons heretofore stated, the circuit court of Harrison county, Mississippi, should have entered an order removing the case to the district court of the United States for the southern division of the southern district of Mississippi, and that this court should reverse this case and enter an order directing said circuit court to make an order of removal. By reason of the errors hereinabove pointed out, we respectfully submit that the judgment of the lower court heretofore rendered herein should be reversed.

*Mize & Mize* and *Rushing & Guice,* for appellees.

All the reply we desire to make to counsel for appellant's last brief filed herein is this: As we said in our oral argument, he can find no case to support his contention, and a reading of his brief, will demonstrate that what we said is true, because he cites no authority, where only the life expectancy value is involved in the instruction where it was held that such instruction has to contain a diminution clause for the living expenses the deceased would have incurred; and, under counsel's contention, where a common laborer or anyone, so far as that goes, is concerned, earning only fifty or sixty dollars per month, however worthy such person might be, and it took practically all such person earned, which it is common knowledge it does for his living expenses, and such person was killed instantly, and where no question is involved of damages for loss

of society or gratuities  or pain and suffering endured by the deceased, but only the life expectancy value is involved, the plaintiff, in such case, if it were the law that there must be a diminution of the life expectancy value by the amount of the living expenses for the period of the life expectancy, could recover only nominal damages.

A reading of the instruction in the case of *Davis* v. *Mich. Cent. R. R. Co.,* 147 Mich. 479, cited in our additional brief, shows that the court told the jury specifically that—"You are not concerned with the amount of earnings the young man would probably have saved but only with the probable earnings themselves.   The table of expectancy put in evidence shows that, if of good health he might have lived — years longer that he did.   Estimate the present worth of his probable earnings during the time he would probably have lived at—per cent. simple interest for each year, and the sum of these for the several years he would probably have lived will be the amount of your verdict for the loss of earnings." And no word is said about reduction by the amount of probable living expenses during the period of his life expectancy; and, in view of the fact that the court in the Brondum case the Martin case and the Griffin case, by affirming said cases containing the instruction as to life expectancy value being recoverable, with no clause for reduction by the living expenses, committed itself to this doctrine which we think is correct, and that the doctrine of this court is so well established on this point that it is almost a matter of property right, then, before a court should overrule its prior decisions, there should be some cogent reason supported by authority.

The statutes of Michigan and Illinois under which the cases cited in our additional brief were decided authorized recovery for the life expectancy value, just as our statute does.   Besides, in the instant case, there were other elements of damages, as was told the jury in another instruction given for the plaintiffs, to-wit: in the language of the statute, that: "They could recover for damages of every kind," in this case, being for loss of his society, and it also

presenting, we think, a case in which they could recover for the pain and suffering of deceased between his injury and death; and again we say, that in passing on the amount awarded, the court should take into consideration whether, as a whole, justice has been done; and we believe that it was done in this case.

ANDERSON, J., delivered the opinion of the court.

This suit was brought in the circuit court of Harrison county by appellees, mother and father and brothers of Jas. F. Garnett, deceased (who died leaving neither wife, children, nor descendants of children), against appellant, Louisville & Nashville Railroad Company, for damages resulting from the alleged wrongful death of said decedent caused by appellant. Appellees recovered judgment in the sum of twenty thousand dollars from which judgment appellant prosecutes this appeal.

Appellant at the time and in the manner provided by the federal statutes on the subject sought to remove the cause to the federal district court for the southern district of this state, in which district Harrison county is situated. The petition for removal was accompanied by a bond which was approved by the court. The application for removal was based on the ground of diversity of citizenship of the parties in connection with the fact that the amount in dispute, exclusive of interest and costs, exceeded the sum of three thousand dollars. The trial court refused to make the order of removal, which action is assigned as error. Appellant's petition for removal alleged, in addition to the existence of the jurisdictional amount and other formal requisites, that appellant was a Kentucky corporation and a resident and citizen of that state, while the appellees were residents and citizens of the state of Alabama.

Appellant contends that in view of the fact that the federal district courts are given jurisdiction of a cause of this character by virtue of section 24 of the Judicial Code (U. S. Comp. St., section 991), it follows that it was re-

movable by the defendant from the state court to the proper federal district court under section 28 of the Judicial Code (section 1010). The applicable statutes governing the question are sections 24, 28, and 51 of the Judicial Code. By section 24 the district courts of the United States are given jurisdiction of all causes of a civil nature at law and equity where the matter in controversy exceeds three thousand dollars and is between citizens of different states. Section 28 provides, among other things, that such suits shall be removable into the district court of the United States for the proper district by the defendant or defendants who are nonresidents of the state where the suit is brought. Section 51 (section 1033) provides that no suit shall be brought against any person by original process in any other district than that whereof he is an inhabitant, except where the jurisdiction is founded on diverse citizenship, in which event suit may be brought only in the district of the residence of the plaintiff or defendant.

It is argued with great force that section 51 of the Judicial Code is a venue statute and not a statute conferring jurisdiction; that section 24 of said Code confers jurisdiction of causes of this character on the federal district courts, and that by virtue of section 28 of said Code appellant was entitled to, remove this cause to the proper federal district court because said section expressly gives the defendant or defendants who are nonresidents of the state where the suit is brought the right to such a removal.

On the other hand, appellees contend that under section 51 the federal district court for the southern district of this state, wherein Harrison county is situated, had no original jurisdiction of this cause because neither the plaintiffs nor the defendant were residents of said district, and therefore the cause was not removable to that court from a state court of that district; that no cause of this character can be removed from a state court to a federal court, unless it could have been brought originally in the federal court to which it is sought to be removed.

We merely state the contentions of the respective parties with reference to this question. The same question was before this court in *Stewart* v. *Cybur Lumber Co.,* 111 Miss. 844, 72 So. 276. The court held in that case contrary to the contention of appellant. We are unwilling to overrule that case, especially since it finds support in *Ex parte Wisner,* 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264.

The action of the trial court in refusing to direct a verdict in appellant's favor is assigned as error. A determination of this question requires a consideration of the case made on behalf of the appellees. The deceased was killed by being run down and struck by one of appellant's trains, in the corporate limits of the city of Biloxi near appellant's depot. It occurred in the nighttime. The train was running at a speed of from fifteen to twenty miles an hour. The deceased was walking between appellant's main line and its passing track along a much frequented path. When the engine pulling this train on the main line got within about twenty feet of the deceased, he suddenly stepped nearer the main line track within the danger zone of the approaching engine, but not between the rails, and was struck either by the pilot beam or the cylinder of the engine and killed. The evidence shows without conflict that immediately before the deceased stepped within the sweep of the engine he was walking in a place of safety, and that after he moved into a position of danger it was utterly beyond the power of the engineer to stop the train in time to avoid striking deceased. It is argued on behalf of appellant that the deceased's death was caused alone by his own fault; that the speed of the train had no proximate causal connection with his death; that if the train had not exceeded the speed limit, still the deceased would have been killed because it would have been impossible to stop it within twenty feet. It should be borne in mind that the deceased was not run over by the engine; that he was not between the rails, but on the outside near the ends of the cross-ties; and that he was killed as the result of being struck by the pilot beam or cylinder of the engine. Can it

be said with certainty that if the train had not exceeded the speed limit the deceased would not have been killed? We think not. If it had been moving at a speed not exceeding six miles an hour when deceased was struck by the engine, certainly the blow would have been with very much less force than it was while running at a speed of from fifteen to twenty-five miles an hour; it might have done him little if any harm. A train running not more than six miles an hour is running very slowly. We think this was a question for the jury. It was a question about which reasonable minds might differ, therefore the trial court committed no error in refusing to direct a verdict for appellant.

The action of the court in granting the following instruction for appellees is assigned as error:

"The court instructs the jury for the plaintiffs that, if you find for the plaintiffs, the measure of their damages is the present value of the life expectancy of the deceased. The amount, if you find for the plaintiffs, should be fair and reasonable as the evidence may show, if any, to compensate them for the death of said deceased Garnett, not to exceed the sum of sixty thousand dollars."

This instruction is criticized on more than one ground, but we only deem it necessary to notice one, and that is that it authorized the jury to return a verdict for the present cash value of the amount deceased would have earned during his life expectancy without making any deduction for his living expenses. The present cash value of the annual income of a person during his life expectancy is the discount value at six per cent. per annum, the prevailing noncontract rate of interest, on each installment of such annual income for the period it has to run. His living expenses are not taken into account in arriving at the result. It is argued that measuring deceased's life expectancy in the manner authorized by said instruction made him more valuable to his family dead than alive, and that is true. This question was considered and passed upon in *New Deemer Mfg. Co.* v. *Alexander,* 122 Miss. 859,

85 So. 104, and *Hines* v. *Green,* 125 Miss. 476, 87 So. 649. It was held in those cases that the present cash value of what one would earn during his life expectancy must be diminished to the extent of what he would have spent in his own maintenance and support had he lived. In the latter case the court in its opinion set out specifically how, under the facts of that case, the measure of damages based on the deceased's earning capacity and life expectancy should be, arrived at, using this language:

The expectancy of the deceased was twenty-nine and sixty-two hundredths years, and he was a healthy man both in mind and body, and was earning five dollars per day. This would amount to one thousand eight hundred and twenty-five dollars per year. The evidence does not contain any calculation of the expectancy, nor are any tables introduced by which computation may be made according to any standard, recognized mortality tables. But, finding the present value by dividing the total expectancy, if earned, by one plus six per cent., the legal rate of interest, for the average number of years of the expectancy, which in the absence of other proof we will apply in this case, we find that the gross net value is approximately twenty-four thousand dollars, *from which must be deducted the expenses that would have been incurred by the deceased on his own account in living and supporting himself during the period of his expectancy,* which would doubtless have amounted to at least fifty dollars per month, and we think that the highest verdict that could be upheld on the elements of damage involved in the trial would be sixteen thousand dollars." (Italics ours.)

We do not understand that this question was passed on in *Miss. Oil Co.* v. *Smith,* 95 Miss. 528, 48 So. 735, and *Cumberland Tel. Co.* v. *Anderson,* 89 Miss. 732, 41 So. 263. The mind of the court was not directed to the question in either of those cases.

If the deceased had lived, the appellees could not have received from him by way of donation more of his annual income than was left after paying his own living expenses.

The measure of recovery is the net present cash value of what the deceased would have earned during his life expectancy, and not the gross amount, which this instruction authorized the jury to find.

The trial court therefore erred in giving the instruction in question. Was it such an error as was harmful to the appellant? In order to properly answer this question, it is necessary to state: It was shown that the deceased was twenty-two years of age in March before his death in April, and that his life expectancy was forty-one and eighty-five hundredths years; he was earning a salary of one thousand three hundred dollars a year, and had a half interest in some business, the profit from which was not shown. That the deceased was wounded and died under such circumstances as that he suffered no physical and mental pain. He had neither wife nor children, and lived away from his family, who resided in the state of Alabama, while the deceased resided in this state. The fault of the appellant was (taking appellee's evidence to be true) exceeding the speed limit, and failing to ring the bell of the engine for the public crossing, at or near which the deceased was struck. Notwithstanding appellant was derelict in those respects, the deceased, unless he was blind and deaf (and there is no evidence to show that he was either), is bound to have heard the approach of the on-coming train going at a speed of from fifteen to twenty-five miles per hour, and to have seen the headlight of the engine blazing down the track at his side and ahead of him. While thus situated and only about twenty feet ahead of the engine, for some mysterious reason he suddenly moved into the sweep of the engine and was struck down and killed. Under the evidence in this case the verdict is large. The jury in comparing the negligence of the appellant with that of deceased were, under the facts, authorized to charge the deceased, to say the least of it, with very much the larger part of the wrong which caused his death. In the giving of the instruction in question appellant, under the facts of this case, was denied a substantial right.

We find no reversible error arising on the trial of the question of liability.

Reversed and remanded for a new trial on the question of damages alone.

*Reversed and remanded.*

HOLDEN, J., dissents.