783 F.2d 1249
 Joan SMITH, individually and as Executrix of the estate of
John Smith, and as representative of the heirs of
John Smith, Plaintiff-Appellant,
v.
INDUSTRIAL CONSTRUCTORS, INC., etc., et al., Defendants,
John E. Phelan, an individual, et al., Defendants-Appellees.
 No. 85-4616
 
 Summary Calendar.
 United States Court of Appeals,
 Fifth Circuit.
March 3, 1986.
 C.R. McRae, Margaret Ellis, Pascagoula, Miss., for plaintiff-appellant.
 Hopkins, Logan & Vaughn, Stephen A. Anderson, Mark W. Davis, Gulfport, Miss., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before POLITZ, GARWOOD and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 The issues before us concern two adjustments to an award for lost earnings in a wrongful death case. The plaintiff's decedent was killed in an automobile accident for which the district court, in a bench trial, found him seventy-five percent at fault. We must decide whether prejudgment interest should have been awarded on earnings lost between the time of death and the time of trial, and whether the damage award based on the decedent's lost earnings was appropriately reduced by the amount of income tax he would have paid on those earnings.
 
 
 2
 * While driving north on highway 611 in Pascagoula, Mississippi, on November 6, 1981, John Smith collided with the rear end of a tractor/trailer driven by John Phelan, an employee of Ernest Construction Company. The accident occurred immediately after Phelan pulled out onto the highway. Smith was killed instantly.
 
 
 3
 John Smith's widow, Joan Smith, sued Phelan, Ernest Construction Company, and Industrial Constructors, Inc., as an individual, as executrix of Smith's estate, and as the heirs' representative under the Mississippi wrongful death statute. The district court heard the case without a jury, and in a thorough and able opinion held that Phelan was twenty-five percent negligent, and Smith was seventy-five percent negligent. The district court also held that Industrial Constructors, Inc., was not liable to the plaintiff because it was an entirely separate entity from the true employer, Ernest Construction Company. Ernest Construction Company was held liable under the doctrine of respondeat superior.
 
 
 4
 The district court awarded damages that generally followed those suggested by the plaintiff's expert, but reduced the earnings awards by increasing the amount for Smith's living expenses. The plaintiff's expert testified on expected wage increases, inflation, living expenses and an appropriate discount rate; he also prepared estimates that accounted for these factors.
 
 
 5
 The court allowed $200,000 for the loss of Smith's society, $475,000 for the loss of Smith's future earnings, and $75,000 for the loss of Smith's earnings from the time of his death to trial. These figures for lost earnings were already discounted to present value and adjusted for living expenses, inflation and income taxes. The plaintiff's total damages were therefore $750,000, which the district court reduced by seventy-five percent to reflect Smith's comparative negligence, arriving at an award of $187,500 to the plaintiff under the wrongful death statute. The district court also awarded $898.13 to Smith's estate, after reduction for Smith's liability, for funeral expenses. At the same time, the court denied Mrs. Smith's motion for prejudgment interest, holding that there was a legitimate dispute over the amount that the plaintiff might be able to recover and the action was one sounding in tort.
 
 
 6
 Mrs. Smith argues that she should receive an award of prejudgment interest on Smith's lost earnings from the time of his death to the time of trial according to the legal rate of interest fixed by Mississippi law, and describes this sum as liquidated. She argues that she has properly pleaded the issue of prejudgment interest by asking for it in her complaint.
 
 
 7
 Mrs. Smith also objects to the reduction of the award by the amount of income taxes the decedent would have paid on his future earnings. She argues that there is no precedent for such a reduction under Mississippi law, and that any such reduction for taxes is speculative and therefore not proper as a reduction of damages. In the alternative, Mrs. Smith argues the taxes should not be calculated on the total amount of lost-earnings damages before reduction for comparative fault, but rather income taxes should be calculated after the total amount has been reduced by the amount of his comparative fault, which would result in a lower tax rate on the proceeds.
 
 II
 
 8
 Neither party contests any factual finding of the district court, nor does either party contest the district court's ruling on the precentage of negligence attributable to the respective sides. The only issues, therefore, left for our review are whether the district court properly denied prejudgment interest on the award of Smith's lost earnings from the date of his death to the date of trial, and whether the district court properly subtracted income taxes from Smith's lost earnings.
 
 III
 
 9
 Preliminarily, we must note that both issues in this case are controlled by Mississippi law. It is well established that in diversity cases in the Fifth Circuit "state law governs the measure of damages." Murphy v. Georgia Pacific Corp., 628 F.2d 862 (5th Cir.1980), quoting Weakley v. Fishbach & Moore, Inc., 515 F.2d 1260, 1267 (5th Cir.1975). See also Culver v. Slater Boat Co., 688 F.2d 280, 289-90 (5th Cir.1982), en banc, relevant part reaff'd, 722 F.2d 114, 123 (5th Cir.1983). We have also specifically held that the question of prejudgment interest is controlled by state law. Vicon, Inc. v. CMI Corp., 657 F.2d 768, 776 (5th Cir.1981); Dunn v. Koehring Co., 546 F.2d 1193, 1201 (5th Cir.1977). Mrs. Smith notes that some confusion is engendered by one of our cases on the question whether state law controls the award of prejudgment interest. Nations v. Sun Oil, 695 F.2d 933, 939 n. 2 (5th Cir.1983). The footnote in Nations appears to indicate that the Fifth Circuit standard for federal cases would control a Mississippi workmen's compensation case in determining the method for discounting. The footnote in question is dicta because the real issue the court was addressing in Nations was a conflict between jury instructions. Furthermore, we have clearly stated in Vicon and Dunn that state law controls the award of prejudgment interest. We therefore follow the clear guide of Vicon and Dunn and apply Mississippi law in determining the award of prejudgment interest. Similarly, Mississippi law controls the subtraction of taxes from a damage award for future earnings because that reduction is a question of the measure of damages.
 
 A.
 
 10
 Mississippi law is quite clear on the question whether prejudgment interest can be awarded for estimated earnings from the time of death to the time of trial. Under Mississippi law, "it is often stated that in the absence of statute or contract providing expressly therefor, or proof sufficient to support an award of punitive damages, there can be no recovery of attorney's fees or prejudgment interest." Stanton and Associates v. Bryant Construction Co., 464 So.2d 499, 502 (Miss.1985). Mrs. Smith does not contend that the proof is sufficient to support an award for punitive damages, and, in fact, by failing to contest the apportionment of liability, she concedes the inapplicability of punitive damages. Punitive damages are available in Mississippi only "for a willful and intentional wrong, or for such gross negligence and reckless negligence as is equivalent to such a wrong." Standard Life Insurance Co. of Indiana v. Veal, 354 So.2d 239, 247, (quoting Seals v. St. Regis Paper Co., 236 So.2d 388, 392 (Miss.1970)). Also, "there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." Standard Life Insurance Co. of Indiana, 354 So.2d at 247 (quoting Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 150-51, 141 So.2d 226, 233 (1962)). A finding of only twenty-five percent negligence is incompatible with the gross negligence required for punitive damages.
 
 
 11
 In order to recover prejudgment interest, therefore, the plaintiff here must show some statute that would support an award of prejudgment interest. The Mississippi wrongful death statute makes no provision for prejudgment interest. Miss.Code Ann. Sec. 11-7-13. Another provision cited by the plaintiff only sets out the legal rate of interest in Mississippi. Miss.Code Ann. Sec. 75-17-1. No other Mississippi statute provides for prejudgment interest on estimated earnings from the time of the decedent's death to the time of trial. Consequently, the trial judge would have been correct in denying prejudgment interest on this basis alone.
 
 
 12
 The district court, however, went on to note that, even where it would be proper to allow prejudgment interest, such as in cases where punitive damages would have been proper, the trial judge has discretion over whether prejudgment interest will be awarded. Dunn, 546 F.2d at 1201. The district court held that the allocation of liability showed that there was a legitimate dispute as to whether any payment was due the plaintiff, and therefore that no award of prejudgment interest would be proper. Highlands Insurance Co. v. McLaughlin, 387 So.2d 118, 121 (Miss.1980); Glantz Contracting Co. v. General Electric Co., 379 So.2d 912, 918-19 (Miss.1980). We hold that the district court did not abuse its discretion in refusing prejudgment interest on the wages lost from the time of death to the time of trial.
 
 
 13
 Mrs. Smith also argues that Smith's earnings from the time of his death to the time of trial were liquidated and that because these earnings were clearly established and not speculative, prejudgment interest should be awarded on these damages. This is obviously incorrect because Smith did not live to earn these wages; we can only estimate what they might have been. The wages are therefore as speculative as those that would have been earned after trial. This argument therefore adds nothing to Mrs. Smith's pursuit of prejudgment interest for these earnings, and we affirm the district court's denial.
 
 B.
 
 14
 As the district court noted, we have no explicit Mississippi authority to guide us on the question whether it is appropriate to fashion awards for future earnings by reducing the award by the amount of income tax that the decedent would have paid.[1] The rationale of the district court in subtracting income taxes was based on an analogy to the Mississippi rule that subtracts living expenses from a future earnings award. Louisville & Nashville Ry. Co. v. Garnett, 129 Miss. 795, 93 So. 241 (1922). Garnett reasoned that without such a reduction the decedent's beneficiaries under the wrongful death statute would be in a better position because of his death than they would have been had he lived.
 
 
 15
 The Mississippi wrongful death statute sets out a very vague standard of damages, seemingly guided only by the conscience of the jury. "In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit." Miss.Code Ann. Sec. 11-7-13.
 
 
 16
 Over the years, however, the Mississippi Supreme Court has somewhat crystallized the statute by developing two guiding principles. First, the statute's objective "is to furnish compensation for the injuries received to the parties suing for the death of the deceased, they having the right to sue for the value of the life under the statute." New Deemer Mfg. Co. v. Alexander, 122 Miss. 859, 85 So. 104, 107 (1920).
 
 
 17
 This general principle was the progenitor of the second guiding principle, a more specific damage standard for wrongful death.
 
 
 18
 The elements of damage suffered ... include:
 
 
 19
 (1) Gratuities that the [statutory beneficiaries] had a reasonable expectation of receiving.[2]
 
 
 20
 (2) Loss to all the beneficiaries of the deceased's society and companionship.
 
 
 21
 (3) The sum the deceased might have received as the present net value of his own life expectancy.
 
 
 22
 Dickey v. Parham, 295 So.2d 284, 285 (Miss.1974) (citations omitted). Because income taxes were subtracted from the award for item (3), only that item is at issue here.
 
 
 23
 Although, as the Mississippi Supreme Court has pointed out, there is "no formula by which damages can be computed to a mathematical certainty in a wrongful death action," Dickey, 331 So.2d at 918-919, the net present cash value of the decedent's life has been used consistently in Mississippi cases. Applied to this case where the evidence shows no source of income besides wages, this measure consists of the present value of the decedent's estimated future wages less the decedent's estimated living expenses, calculated over the decedent's life expectancy. Garnett, 93 So. at 243.
 
 
 24
 Together, these two guiding principles show that the Mississippi Supreme Court has interpreted the Mississippi wrongful death statute to provide reasonable compensation to the beneficiaries for the loss of such pecuniary contributions as the decedent would have, and could have, made to them. The Mississippi Supreme Court has struck down many awards that offended against this principle by failing to subtract unjustified amounts from wrongful death awards. Sheffield v. Sheffield, 405 So.2d 1314 (Miss.1981); Graham, 117 So. at 884-885; Garnett, 93 So. at 243; Hines, 87 So. 653; New Deemer Mfg. Co., 85 So. at 107-108.
 
 
 25
 The Mississippi Supreme Court has continually referred to Garnett to analyze arguments concerning damages that are attacked as excessive. In Garnett, the plaintiff's decedent was killed when he was struck by a train. At trial, the beneficiaries recovered $20,000 from a jury verdict. Among other contentions, the defendant assigned as error the following instruction:
 
 
 26
 The court instructs the jury for the plaintiffs that, if you find for the plaintiffs, the measure of their damages is the present value of the life expectancy of the deceased. The amount, if you find for the plaintiffs, should be fair and reasonable as the evidence may show, if any, to compensate them for the death of said deceased Garnett, not to exceed the sum of $60,000.
 
 
 27
 Garnett, 93 So. at 242.
 
 
 28
 The Garnett court observed that the present value of the decedent's life expectancy as defined in the instruction was a gross figure, one which made no reduction for the decedent's estimated future living expenses. It then said, "It is argued that measuring deceased's life expectancy in the manner authorized by said instruction made him more valuable to his family dead than alive, and that is true." Id. at 243. The Garnett court cited previous cases that had reduced the present value of the deceased's life expectancy by the amount of living expenses and quoted with approval an instruction that had made such a reduction. Most significantly for purposes of our analysis here, the Garnett court said,
 
 
 29
 If the deceased had lived, the [plaintiffs] could not have received from him by way of donation more of his annual income than was left after paying his own living expenses. The measure of recovery is the net present cash value of what the deceased would have earned during his life expectancy, and not the gross amount, which this instruction authorized the jury to find.
 
 
 30
 Id. If we were to add the phrase "income taxes" to the phrase "living expenses" in the above quotation, the quotation would not only be logically consistent, it would also complement the Mississippi goal of awarding the beneficiaries the amount, but only the amount, that the decedent reasonably would have, and could have, contributed to them.
 
 
 31
 Sheffield provides the most recent case in point. The Sheffield court, while noting the arguments against the deduction of living expenses and noting some inconsistency on the part of the Mississippi Supreme Court, said, "We think the better view is that the living expenses of the deceased should be deducted from the present cash value of the deceased's life as set forth in Louisville & Nashville Ry. Co. v. Garnett, supra. Therefore, we overrule all cases contrary to this holding. Hereafter this will be a relevant factor in calculating damages in wrongful death cases." Sheffield, 405 So.2d at 1318. We therefore approach the de novo question of the subtraction of income taxes from a wrongful death award in the light of this distillation of Mississippi law.
 
 
 32
 Judged by this standard, the district court's reduction of the decedent's estimated future earnings by the amount of estimated income taxes is perfectly in accord with Mississippi law. Mississippi awards damages to compensate beneficiaries for the loss of such pecuniary contributions as the decedent reasonably would have and could have made to them. The portion of the decedent's earnings that would have gone toward income taxes could not have been contributed to the beneficiaries if the decedent had lived. Like the decedent's estimated future living expenses, the failure to subtract estimated future income taxes from the award would place the beneficiaries in a better position because of the decedent's death.
 
 
 33
 Thus, we are convinced that if presented the question before us, the Mississippi Supreme Court would apply its reasoning in Garnett and hold that wrongful death awards based on future earnings of the deceased should be reduced by the amount of income tax the deceased would have paid on those earnings.
 
 
 34
 We are buttressed by cases from other jurisdictions and by commentators' analyses. Professor Dobbs, author of a widely used hornbook on remedies, has suggested that, in wrongful death cases, the weight of authority supports the subtraction of taxes.[3] D. Dobbs, Handbook on the Law of Remedies Sec. 8.8 (1973). The general rationale of wrongful death awards is the same one that we have noted from the Mississippi cases, that the decedent's beneficiaries should be compensated for the contributions the decedent would have made and now cannot. W. Keeton, Prosser and Keeton On the Law of Torts Sec. 127 (5th ed. 1984). Income taxes obviously reduce the amount of contributions the decedent could have made, and they are therefore highly relevant evidence of the decedent's capacity to contribute to the beneficiaries. "The deceased's beneficiaries could not logically and reasonably have expected to receive the money he would have paid in such taxes had he lived. Only the net income would have been available for their support." Cox v. Northwest Airlines, Inc., 379 F.2d 893, 896 (7th Cir.1967).
 
 
 35
 Of course, evidence on the decedent's future taxes is only evidence--evidence subject to challenge just as other evidence is subject to challenge. If, for example, because of the nature of the income or otherwise, the decedent was entitled to tax exemptions, deductions, credits or the like, such evidence is clearly admissible to show that tax liability on lost earnings would not have reduced the decedent's contributions to the beneficiaries to the extent contended, if at all. In most situations, the estimation of future taxes would be no more difficult than other items of damages. Either side could prepare a reasonably accurate estimate of future taxes from current generally applicable tax rates. Id. This estimate could then be challenged with evidence that the decedent's personal situation required higher or lower rates. See, e.g., the thoughtful discussion in Brooks v. United States, 273 F.Supp. 619 (D.S.C.1967). The fact-finder would then be in a position to weigh all the evidence and arrive at a damage figure.
 
 
 36
 Finally, we address the arguments that have been levelled against the subtraction of taxes from earnings awards. There are three basic arguments. See Huddell v. Levin, 395 F.Supp. 64, 84-91 (D.N.J.1975). The first is that because the Internal Revenue Code provides that damage awards are nontaxable to the recipient, Congress intended to exempt jury awards from federal income taxes and that that exemption should not be circumvented by reducing such awards by the amount of income taxes the decedent would have paid on his earnings. 26 U.S.C. Sec. 104. The commentators have generally rejected this argument from legislative history and analysis. Nordstrom, Income Taxes and Personal Injury Awards, 19 Ohio St.L.J. 212, 222 (1958); D. Dobbs, supra, at Sec. 8.8.
 
 
 37
 The second argument is "that the matter of taxes is really a matter between the plaintiff and the government and is none of the defendant's business." Id. This rather vague argument has been compared to the collateral source rule for insurance benefits. The collateral source rule provides that an award is not to be reduced by insurance benefits that the plaintiff or decedent may have received.
 
 
 38
 The analogy seems to be thus: just as the collateral source rule prevents a defendant from claiming the benefit of the decedent's relationship to a third party, i.e., the insurance company, this rule prevents the defendant from reducing the award by virtue of the decedent's relationship to the government. The analogy, however, is inappropriate because the reasons justifying the collateral source rule do not apply to the income tax rule. Strong economic and equitable considerations justify the collateral source rule. Among other economic reasons, the collateral source rule makes economic sense because it encourages potential victims to buy insurance. R. Posner, Economic Analysis of Law, 152-53 (2d ed. 1977). The collateral source rule is also fair because plaintiffs have bought the right to insurance benefits and should not be denied these benefits by having their award reduced by the amount of those benefits. The same economic and equitable justifications are clearly not applicable to income taxes.
 
 
 39
 The third argument is that subtracting income taxes is an adjustment that is simply too speculative and judicially time-consuming. Brooks v. United States, 273 F.Supp. 619, 629 (D.S.C.1967); D. Dobbs, supra, at Sec. 8.8. The Supreme Court faced this argument in the context of Federal Employers' Liability Act awards and was not convinced. Liepelt, 444 U.S. at 494, 100 S.Ct. at 757. The question in Liepelt was whether the jury could consider evidence of the income taxes that the decedent would have had to pay on his earnings. In Liepelt the Supreme Court held that evidence on the income taxes payable on the decedent's estimated past and future earnings was relevant and that it was error to refuse a jury instruction on the tax-free status of the FELA award. The damage standard for FELA awards is similar to that employed for Mississippi wrongful death awards: "[T]he damages ... [that] flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received." Id. at 493, 100 S.Ct. at 757 (quoting Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 70, 33 S.Ct. 192, 196, 57 L.Ed. 417 (1913)). The Liepelt Court expressed great confidence in the ability of juries to weigh the exact sort of evidence presented here against a very similar standard. The Liepelt court said, "We therefore reject the notion that the introduction of evidence describing a decedent's estimated after-tax earnings is too speculative or complex for a jury." Id. 444 U.S. at 494, 100 S.Ct. at 757.[4]
 
 
 40
 Like the Supreme Court and the majority of other courts that have considered the three arguments set out above, we reject each of them as unconvincing. We believe that the Mississippi Supreme Court, in view of the rationale of Garnett, as we have explicated at some length, would also find them unconvincing and, for the reasons we have stated earlier, would hold that awards based on future earnings are subject to reduction by the income taxes that the decedent would have paid on those earnings.
 
 IV
 
 41
 Because we hold that the district court did not abuse its discretion in refusing the award of prejudgment interest for lost earnings from the time of death to the time of trial, and because we hold that the district court correctly applied Mississippi law in subtracting income taxes from the award for lost earnings, the judgment of the district court is therefore
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 For calculation of damages for wrongful death in Mississippi generally, See Butler v. United States, 726 F.2d 1057, 1067-68 (5th Cir.1984); Hines v. Green, 125 Miss. 476, 87 So. 649 (1921)
 
 
 [2]
 Other Mississippi cases make clear that item (1) is not given in addition to item (3), but that item (1) reflects income the decedent might have made out of item (3). Dickey v. Parham, 331 So.2d 917, 918 (Miss.1976); Gulf, M. & N.R. Co. v. Graham, 153 Miss. 72, 117 So. 881 (1928)
 
 
 [3]
 Dobbs has suggested that the majority rule for personal injury awards, where the plaintiff is the person who has suffered (usually) physical injury and survived, is that income taxes should not be subtracted from an award for lost earnings. D. Dobbs, supra Sec. 8.8. This may still be true, although the majority has weakened. Norfolk & Western Ry. Co. v. Liepelt, 444 U.S. 490, 100 S.Ct. 775, 62 L.Ed.2d 689 (1980) (income taxes relevant in FELA award); In re Air Crash Disaster Near Chicago, Ill., 701 F.2d 1189, 1199 (7th Cir.1983) (although Illinois, like the majority, would reject jury instruction that award is tax-free, substantive measure of damages same as FELA); Croce v. Bromley Corp., 623 F.2d 1084, 1087-88 (5th Cir.1980) (not error to refuse jury instruction that award tax-free: Louisiana law); Runyon v. District of Columbia, 463 F.2d 1319 (D.C.Cir.1972) (subtraction proper under District of Columbia wrongful death statute); United States v. Furumizo, 381 F.2d 965 (9th Cir.1967) (subtraction proper under Federal Tort Claims Act); United States v. Sommers, 351 F.2d 354 (10th Cir.1965) (subtraction in trial judge's discretion under Federal Tort Claims Act); McWeeney v. New York, N.H. & Hart. R. Co., 282 F.2d 34, 35-39 (2d Cir.1960) (subtraction proper only for middle and higher incomes); Curry v. United States, 338 F.Supp. 1219, 1223 (N.D.Cal.1971) (subtraction proper under Death on High Seas Act); Plant v. Simmons Co., 321 F.Supp. 735 (D.Md.1970) (subtraction improper under Maryland law); Gradel v. Inouye, 441 Pa. 534, 421 A.2d 674 (Pa.1980) (defendant not entitled to jury instruction on tax-free status of damages)
 
 
 [4]
 Note also the Fifth Circuit's greater willingness lately to consider the complex question of inflation adjustments. Compare Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir.1983) (en banc) to Johnson v. Penrod Drilling Co., 510 F.2d 234 (5th Cir.1975) (en banc)