Stella Catherine Beloate BEVILLE, Administratrix of the Estate of Robert Hawkins Beville, Deceased, for said Estate and the Wrongful Beneficiaries of Robert Hawkins Beville, Deceased, Plaintiff–Appellee,

v.

BURLINGTON NORTHERN RAILROAD, Defendant–Appellant.

No. 91–1448.

United States Court of Appeals, Fifth Circuit.

May 14, 1992.

William C. Spencer, John G. Wheeler, Mitchell, McNutt, Threadgill, Smith & Sams, Tupelo, Miss., for defendant-appellant.

Richard T. Phillips, Smith, Phillips & Mitchell, Batesville, Miss., for plaintiff-appellee.

Before WISDOM, JONES, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

In this wrongful death suit, the appellant, Burlington Northern Railroad ("Burlington") contends that the district court erred by admitting the testimony of the plaintiff's expert economist and by denying Burlington's motions for directed verdict and judgment notwithstanding the verdict. Burlington also contends that the district court should have granted a new trial, or at least should have held an evidentiary hearing, based on allegations of juror partiality. We agree that the district court should have held an evidentiary hearing regarding the allegations of juror misconduct, and we remand the case for that purpose.

## I. BACKGROUND.

In July 1989 Robert Beville was killed when the car he was driving was struck by a Burlington train at the intersection of the Burlington Line and Red Banks Road in Desoto County, Mississippi. The appellee, Stella Beville, as the administratrix of the estate of Robert Beville, brought this wrongful death action in the Circuit Court of Desoto County, Mississippi. Burlington removed the action to the United States District Court for the Northern District of Mississippi.

Although the complaint alleged several theories under which Burlington's negligence had caused Mr. Beville's death, the case was tried to a jury on the theory that Burlington had negligently failed to maintain the crossing and right of way. Bur-

lington moved for a directed verdict at the close of the plaintiff's case and at the close of all the evidence. The district court denied both motions. The jury returned a verdict against Burlington in the amount of $250,000. Burlington then moved for a judgment notwithstanding the verdict, which the court denied.

After the judgment was entered, Burlington moved for a new trial or an evidentiary hearing based upon, *inter alia*, allegations that during voir dire one of the jurors had concealed her knowledge of another accident at the same intersection. The district court denied that motion. This appeal followed.

## II. DISCUSSION

### A. *The testimony of the plaintiff's expert.*

■ Prior to trial Burlington filed a motion in limine seeking to exclude the testimony of the plaintiff's expert economist, Dr. Paul Oliver, because his calculations did not address the issues of personal living expenses and tax liability. The district court ruled that the plaintiff's economist would have to account for these factors in his testimony regarding the net present value of the decedent's projected future income. At the close of the plaintiff's direct examination of Dr. Oliver, Burlington moved that his testimony be stricken because it did not contain these calculations. The district court denied that motion.

The Mississippi Supreme Court has held that living expenses are a relevant factor in calculating damages in wrongful death actions.[1] The Fifth Circuit has held that a reduction for estimated income taxes is in accord with Mississippi law.[2] Burlington contends that Dr. Oliver failed to make these reductions in his calculations on di-

rect examination and that his testimony should therefore be stricken.

Contrary to the assertions of Burlington, Dr. Oliver did testify about both living expenses and income taxes on direct examination. Dr. Oliver testified that, assuming a family of four persons, Mr. Beville's personal living expenses would require 12.5 percent of his income. Dr. Oliver also testified that if there were six members in the family, Mr. Beville's personal living expenses would require 8.7 percent of his income. Dr. Oliver explained that the chart from which he was deriving these percentages assumed that the larger the family the smaller the percentage of income that would be available for any one family member's personal living expenses.[3] Dr. Oliver also testified that income taxes would reduce the amount of earnings. Dr. Oliver stated that he could not estimate what the actual effect of income taxes would be because the tax laws are constantly changing.

Although Dr. Oliver did not calculate the effect of these deductions on direct examination, his testimony was sufficient to inform the jury that these deductions should be made from the value Dr. Oliver suggested as the net present value of Mr. Beville's future earnings. Even if it was error to allow his testimony without those explicit calculations, that error was cured. On cross examination, Dr. Oliver explicitly calculated the amount by which various estimates of these factors would affect his initial valuation. Burlington's expert, Dr. Carl Brooking, also made these deductions in his calculations. Finally, the district court instructed the jury that "[f]uture earning should be reduced for personal living expenses and anticipated income taxes, and reduced to present cash value." All of this information was sufficient for the jury to make the proper deductions, and nothing

1. *Sheffield v. Sheffield,* 405 So.2d 1314, 1318 (Miss.1981).

2. *Smith v. Industrial Constructors, Inc.,* 783 F.2d 1249, 1253–54 (5th Cir.1986).

3. There was a difference of opinion between the parties' experts as to the correct family size.

The evidence was that Mr. Beville's family consisted of his wife and four adult children, two of whom live at home. The controversy centered on whether the adult children should be considered members of the family for purposes of calculating Mr. Beville's personal living expenses.

in the record indicates that they did not.[4] There was no error.

B. *Motions for directed verdict and judgment notwithstanding the verdict.*

■ Burlington contends that the district court should have granted the motions for directed verdict and the motion for judgment notwithstanding the verdict due to the plaintiff's alleged failure to make out a prima facie case of negligence on the part of Burlington.

Burlington relies on a Mississippi statute that requires drivers to stop at railroad crossings under certain circumstances. The statute also provides, however, that:

In the trial of all actions to recover personal injury or property damages, sustained by any driver of such vehicles for collision of said vehicle and train in which action it may appear that the said driver may have violated any of the provisions hereof, the question of whether or not the said violation was the sole or approximate cause of the accident and injury shall be for the jury to determine. The violation of this section shall not of itself defeat recovery, and the question of negligence or the violation aforesaid shall be left to the jury; and the comparative negligence statutes and prima facie statute of this state shall apply in these cases as in other cases of negligence.[5]

Thus, by the plain terms of the statute, violation of the statute does not preclude recovery, and the question of proximate cause should be left to the jury.

■ Burlington also relies heavily upon *Mitcham v. Illinois Central Gulf Railroad Co.*[6] Burlington argues that the facts of this case and the facts in *Mitcham* are so similar that *Mitcham* requires a directed verdict in this case. In *Mitcham,* the Mississippi Supreme Court upheld a jury verdict in favor of the railroad. There is no language in *Mitcham* suggesting that the facts *required* a verdict in favor of the railroad, merely that the jury's verdict was a permissible verdict. The statute clearly states that the question of causation is to be left to the jury, as was done in *Mitcham.* Burlington's reliance upon this case is misplaced.

Burlington also relies on *Russell v. Mississippi Central Railroad Co.,*[7] for the proposition that no prima facie case is made out when the oral testimony is completely contradicted by the physical evidence. Unfortunately for Burlington, the photographs and plat maps in this case do not completely contradict the testimony of various witnesses that the intersection was "blind". One of the experts showed on his plat map that there was zero visibility from as close as 38.5 feet from the near rail of the tracks. There was contradictory physical evidence in this case requiring submission of the case to the jury. The district court did not abuse its discretion by denying these motions.

C. *Alleged juror partiality.*

■ During voir dire examination, counsel for Burlington asked the prospective jurors if they had knowledge of any railroad crossing accidents other than the one involved in this case. (They had already been questioned regarding their knowledge of the accident involved in this case.) A newspaper reporter was the only prospective juror who responded to that question.

After the jury returned its verdict in this case, Burlington moved for a new trial or an evidentiary hearing based in part on the allegation that Mrs. Haraway, the jury foreperson, had concealed her knowledge of a subsequent accident at the very intersection involved in this case. Burlington supported its motion with affidavits from

---

**4.** The estimates of damages suggested by the two experts ranged from $507,000 (Dr. Oliver's figure without deductions for living expenses and taxes) to $169,178 (Dr. Oliver's figure recalculated using all of the assumptions favored by Burlington). Burlington's expert actually suggested that $218,297 would be the correct measure of damages. The jury's award of $250,000 is certainly reasonable given this range of estimates.

**5.** Miss.Code Ann. § 77–9–249(3).

**6.** 515 So.2d 852 (Miss.1987).

**7.** 125 So.2d 283 (Miss.1960).

Mike Horton, a claims representative for Burlington. Mr. Horton states in his affidavit that he was informed by the family of the person involved in the second accident that Mrs. Haraway was aware of the second accident at the time of trial in this case. Apparently, the person involved in the second accident is Mrs. Haraway's choir director.

Both parties spend a great amount of time arguing whether the information contained in Mr. Horton's affidavits is sufficient to warrant a new trial. Burlington states that this case is very similar to *United States v. Scott*,[8] in which this Court remanded for a new trial. This case, however, is not similar to *Scott* in one important respect—in *Scott* the district court held a hearing and questioned the juror. The United States Supreme Court has held that the proper remedy for allegations of juror partiality is a hearing in which actual or implied bias could be proven.[9]

Given the allegations in this case, the district court abused its discretion by not holding a hearing to determine whether Mrs. Haraway was a biased juror.[10]

## III. CONCLUSION

The district court committed no error by admitting the testimony of the plaintiff's expert economist, and the court correctly denied the defendant's motions for directed verdict and judgment notwithstanding the verdict. Because the district court should have held an evidentiary hearing on the question of juror partiality, we REMAND for the limited purpose of conducting that hearing. In all other respects, the judgment of the district court is AFFIRMED.

---

**8.** 854 F.2d 697 (5th Cir.1988).

**9.** *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 944, 71 L.Ed.2d 78 (1982).

**10.** According to the plaintiff, Burlington did not inform the plaintiff of this subsequent accident, even though Burlington was under a continuing obligation to supplement its answer to an interrogatory that asked for information regarding other accidents at the same intersection. It is

nearly impossible to believe that counsel for Burlington had no knowledge of this subsequent accident when Mr. Horton, the claims representative, was seated at counsel table throughout the trial. We note in passing that should the district court wish to consider sanctions for this alleged discovery abuse, it may do so in connection with the limited remand granted by this Court.